UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSEPH J. WALBERTS,

                Plaintiff,

v.                                     Case No. 20-cv-321-pp

CHRIS ABELE, *et al.*,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DISMISSING CASE**

Joseph J. Walberts, an inmate at the Thomson Correctional Center who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights under the Sixth and Fourteenth Amendments when he was denied release after completing the Earned Release Program. Dkt. No. 1 at 2. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow a prisoner to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

1

must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On March 2, 2020, Magistrate Judge Joseph ordered the plaintiff to pay an initial partial filing fee of $8.17. Dkt. No. 5. The court received that fee on March 10, 2020. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

   A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face."

2

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The plaintiff has sued former Milwaukee County Executive Chris Abele, Secretary of the Wisconsin Department of Corrections Kevin Carr and Prairie du Chien Correctional Institution Records Supervisor Catrina Samanko. Dkt. No. 1 at 1.

The plaintiff alleges that on October 10, 2018, Milwaukee County Circuit Court Judge Cimpl sentenced him to serve three years of imprisonment (the mandatory minimum) and four years of extended supervision. Dkt. No. 1 at 5. Judge Cimple approved the plaintiff for the "Earned Release Program," under

3

which the plaintiff would be eligible for a modification of his sentence, early release from imprisonment and completion of the custody portion of his sentence on extended supervision. Id.; see Wis. Stat. §§973.01(3g), 302.05(3). The plaintiff alleges that he successfully completed the Earned Release Program on November 15, 2019, but he says the defendants have denied his release from custody. Id.; Dkt. No. 1-1 at 1.

The plaintiff alleges that on November 15, 2019, after he completed the Earned Release Program, defendant Samanko sent the "necessary paperwork" to release him. Dkt. No. 1 at 2-3. He alleges, however, that Samanko erroneously sent the paperwork to the State Attorney's Office in Milwaukee County instead of to Judge Cimpl, and that Samanko refused to contact Judge Cimpl about the plaintiff's "sentence modification." Id. at 3, 5. He asserts that Samanko's actions denied him "his earned right from prison custody" and deprived him of his rights under the Sixth and Fourteenth Amendments. Id. at 5.

The plaintiff alleges that he has written to and spoken with "all" staff at the Wisconsin Department of Corrections, filed a grievance complaint, written to the State Public Defender for help and has filed a motion with the clerk of the circuit court—all to no avail. Id. at 6. He sues the defendants in their individual and official capacities and seeks damages of $1,000 per day he has remained incarcerated since November 15, 2019. Id. at 7. He also seeks garnishment of the defendants' wages and liens placed on their personal property, as well as mandatory disqualification and recusal. Id.

C.  Analysis

1. *Official Capacity Claims*

The plaintiff has indicated that he is suing the defendants in their official capacities. Claims against a government official in her official capacity are another way to sue the entity that she represents or for which she works. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). The court construes the claim against defendant Samanko in her official capacity as a suit against the Wisconsin Department of Corrections, the agency in charge of Prairie du Chien Correctional Institution, where Samanko works. Graham, 473 U.S. at 165–66. The court construes the claim against Secretary Carr in his official capacity a suit against the Wisconsin Department of Corrections. Id. Claims against the Wisconsin Department of Corrections are "no different from a suit against the State itself," so the court construes these claims as having been brought against the State of Wisconsin. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Graham, 473 U.S. at 165–66; Monell, 436 U.S. at 690 n.55). A state is not a "person" against whom the plaintiff may recover monetary damages under 42 U.S.C. §1983. Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003). And the Eleventh Amendment protects the state of Wisconsin and its agencies from suit. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (citing Green v. Mansour, 474

U.S. 64, 73 (1985) and Cory v. White, 457 U.S. 85, 90–91 (1982)). The court will dismiss the plaintiff's official capacity claims against Samanko and Carr.

The court construes the claim against defendant Abele in his official capacity as a suit against Milwaukee County. A local government such as a municipality or county "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under §1983 on a *respondeat superior* theory." Monell, 436 U.S. at 691 (emphasis in original). A municipality may "be held liable under §1983 only for its own violations of federal law." Los Angeles Cty., Cal. v. Humphries, 562 U.S. 29, 36 (2010) (citing Monell, 436 U.S. at 694). To demonstrate municipal liability, a plaintiff "must demonstrate that there was an 'official policy, widespread custom, or action by an official with policy-making authority [that] was the "moving force" behind his constitutional injury.'" Estate of Perry v. Wenzel, 872 F.3d 439, 461 (7th Cir. 2017) (quoting Daniel v. Cook Cty., 833 F.3d 728, 734 (7th Cir. 2016)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 138 (1988) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479–80 (1986) (emphasis in original)). The plaintiff has not alleged that Abele acted under an unconstitutional policy or custom of Milwaukee County. The court will dismiss the plaintiff's official capacity claim against Abele.

### 2. *Individual Capacity Claims Against Defendants Abele and Carr*

Nor may the plaintiff proceed on his claims against Abele and Carr in their individual capacities. The plaintiff has not alleged any specific misconduct by Abele or Carr. He seeks to hold them responsible because of their supervisory positions and authority over others who he alleges wronged him, namely defendant Samanko. Under §1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Iqbal, 556 U.S. at 676. To be held liable under 42 U.S.C. §1983, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001).

The plaintiff has not alleged that Abele's or Carr's actions personally deprived him of his rights. Nor has he alleged that they were aware of or facilitated Samanko's allegedly wrongful conduct and approved or condoned it. Because he alleges no personal involvement by either defendant, the court will dismiss Abele and Carr as defendants.

### 3. *Individual Capacity Claim against Defendant Samanko*

This leaves the plaintiff's individual capacity claim that Samanko prevented him from being released from custody after he had completed the Earned Release Program. The plaintiff is challenging "the fact or duration of his confinement." Morgan v. Schott, 914 F.3d 1115, 1119 (7th Cir.), cert. denied, 140 S. Ct. 643 (2019) (citing Preiser v. Rodriguez, 411 U.S. 475, 489 (1973)); see also Heck v. Humphrey, 512 U.S. 477, 486 (1994).

7

The plaintiff attached to the complaint documents from proceedings in state court. After completing the Earned Release Program, the plaintiff moved for a sentence modification to allow him to complete the in-custody portion on extended release. Dkt. No. 1-1 at 7. The Wisconsin Department of Corrections did not oppose the motion and asked the judge convert the plaintiff's sentence to extended supervision under Wis. Stat. §302.05(3)(c)(1). Id. at 11, 21. The State of Wisconsin took no position on the motion. Id. At 16.

Milwaukee County Circuit Judge T. Christopher Dee reviewed the motion, which was consolidated with two other factually similar cases, and denied the request. Dkt. No. 1-1 at 21–24. Judge Dee concluded that Wis. Stat. §346.65(2)(am)(6), under which the plaintiff was sentenced, mandated that the plaintiff serve a three-year sentence of imprisonment before he could be eligible for release onto extended supervision. Id. at 22–23. Only if the plaintiff had been sentenced to more than the three-year mandatory minimum would the Earned Release Program allow him an early release to extended supervision. Id. at 23. Judge Dee also concluded that the plaintiff's initial sentence authorizing his early release to extended supervision before he had served the mandatory three-year minimum sentence was invalid when Judge Cimpl imposed it. Id. at 24. Because he found that the plaintiff's sentence was invalid, Judge Dee refused to grant the plaintiff's request for release to extended supervision and ordered that he serve the full three years' imprisonment in custody of the Wisconsin Department of Corrections. Id. at 24–25.

8

Case 2:20-cv-00321-PP   Filed 07/20/20   Page 8 of 11   Document 8

The plaintiff appealed the decision, and the appeal remains pending; Judge Dee will issue a ruling on the plaintiff's motion for bond pending appeal on July 22, 2020. Milwaukee County Case No. 2018CF000086, available at https://wcca.wicourts.gov/case.html.

Under Heck v. Humphrey, "[i]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ." Heck, 512 U.S. 486-87. The plaintiff seeks to recover damages from Samanko and the other defendants for his allegedly unconstitutional imprisonment. Under Heck, he cannot pursue that claim unless he can demonstrate that his conviction, or Judge Dee's ruling, has been reversed, expunged, declared invalid or called into question by a federal court in a *habeas* case. The plaintiff has not demonstrated any of those things. The plaintiff's claim against Samanko is barred by Heck v. Humphrey.

Finally, the court notes that even the plaintiff's claim against Samanko were not Heck-barred, he would not state a claim against her. Samanko's alleged error in sending the paperwork to the wrong place is not the reason the plaintiff is still in custody. He is still in custody because of Judge Dee's decision. Samanko had nothing to do with that decision.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that this case is **DISMISSED without prejudice** because the plaintiff has stated no official capacity claims against the defendants, has alleged no personal involvement against Abele or Carr and is barred by Heck v. Humphrey from suing any of the defendants until his conviction has been reversed, expunged or invalidated.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$341.83** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of

judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 20th day of July, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**